UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OCEAN BEAUTY SEAFOODS LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAPTAIN ALASKA, O.N. 1299298, its Engines, Machinery, Appurtenances, etc., *in rem*; CAPTAIN ALASKA FISH CO. LLC, and ROBERT FOSTER, *in personam*; MIKE HOGAN, *in personam*; and MAJESTIC ACRES LLC, *in personam*;<br><br>                    Defendants. | CASE NO. 3:19-cv-06173 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART MAJESTIC ACRES LLC'S MOTION TO DISMISS |

This matter comes before the Court on Third Party Defendant Majestic Acres LLC's ("Majestic") Motion to Dismiss. Dkt. 66. The Court has considered the briefing filed in support of and in opposition to the motion and the file herein, and the matter is now ripe for consideration.

ORDER - 1

In the pending motion, Majestic, a shipyard, moves to dismiss all claims brought against it by Defendant and third-party plaintiff Captain Alaska Fish Co. LLC ("Captain Alaska"), a fishing business with a fishing vessel at Majestic's shipyard. Captain Alaska opposes Majestic's motion but requests the opportunity to amend its claims if the Court agrees that it has failed to state a claim against Majestic. For the reasons below, Majestic's motion to dismiss should be granted in part and denied in part. Though some of Captain Alaska's claims should be dismissed, dismissal should be without prejudice to give Captain Alaska the opportunity to plausibly state its claims.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. PROCEDURAL HISTORY

Plaintiff Ocean Beauty Seafoods, LLC, ("Ocean Beauty"), who is not a party to this motion, sued Defendants Captain Alaska, its manager, Robert Foster, and its vessel, the F/V CAPTAIN ALASKA, O.N. 1299298 ("the Vessel"), *in rem*, to foreclose a preferred ship mortgage based on Captain Alaska's alleged failure to repay a loan secured by the business and the Vessel. Ocean Beauty alleges its loan to Captain Alaska was evidenced by two promissory notes totaling $650,000, plus interest. Dkt. 1. The loan was part of a larger agreement under which Ocean Beauty would have the first opportunity to purchase all seafood caught or sold by Captain Alaska. Ocean Beauty alleges that Captain Alaska defaulted on the notes.

The Vessel is a 78-foot steel purpose-built "salmon tender," a vessel designed to receive, refrigerate, and transport salmon caught and delivered by other vessels to shore-side or floating processing facilities. Dkt. 67 at 2. In response to Ocean Beauty's

complaint seeking mortgage foreclosure and a declaration of its rights, Captain Alaska asserted cross-claims against Mike Hogan ("Hogan"), a welder it hired to perform work on the Vessel, and Majestic, where the Vessel was drydocked. Dkt. 45. Captain Alaska argues that Hogan breached his agreement to perform the work, despite being paid, and that Majestic is wrongfully denying it access to its Vessel. Majestic now seeks dismissal of Captain Alaska's claims against it. Dkt. 66.

**B. FACTS**

The following allegations of fact are taken from Captain Alaska's Answer and Cross-Claim, Dkt. 45, and are accepted as true for purposes of this motion. On May 1, 2017, Captain Alaska hired Hogan to perform welding work on the Vessel while it was located at the Majestic shipyard. *Id.* ¶ 5. Captain Alaska paid Hogan in advance, and the work was to be completed by the end of fall 2017. *Id.* Hogan, however, did not perform the work as agreed. *Id.* ¶ 6. He worked on the Vessel sporadically during 2018 and demanded more advanced payment, though he used that money for unrelated projects and personal purchases. *Id.* Ultimately, Captain Alaska paid Hogan at least $1,026,597.43 for welding work that he did not complete. *Id.* ¶ 7. Majestic was "aware of the Agreement [with Hogan] and assented thereto, *id.* ¶ 5, and "was aware of Hogan's conduct and [Captain Alaska]'s unwitting trust, and willingly benefitted therefrom," *id.* ¶ 6.

In April 2019, Captain Alaska paid Hogan an additional $22,100 for two weeks of welding work, which he failed to complete. *Id.* ¶ 8. According to the cross-claim, "Hogan and Majestic received the referenced $22,100 for the next two weeks of welding . . . [but] failed to perform any welding[.]" *Id.* Hogan then demanded, "acting both for his own

account and on behalf of Majestic," a storage fee of $3,000 per month beginning from the time the Vessel arrived at Majestic and over $10,000 to re-start welding work. *Id*. Hogan, "and through him Majestic," threatened to publish false and misleading statements about Captain Alaska, and then made such statements after Captain Alaska refused demands for more money. *Id.* ¶ 9. Captain Alaska alleges that those statements intentionally interfered with its contractual relationships and business expectancies, including with Ocean Beauty, to whom Hogan and Majestic knew Captain Alaska owed money. *Id.* ¶¶ 9–10. Captain Alaska alleges that it could only repay Ocean Beauty after the welding work was complete and the Vessel became seaworthy, and could process salmon. *Id.* ¶ 10. After Hogan's repeated failures to finish the welding work, Captain Alaska sought to remove the Vessel, her equipment, appurtenances, and other related property from Majestic's premises, but both Hogan and Majestic refused. *Id.* ¶ 11.

## II.   DISCUSSION

### A.   STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A plaintiff who fails to state a claim, however, shall freely be granted leave to amend "when justice so requires." *Balistreri*, 901 F.2d at 701 (quoting Fed. R. Civ. P. 15(a)). This generous standard requires leave to amend "if it appears at all possible that the plaintiff can correct the defect." *Id.* (internal quotation omitted).

## B. BREACH OF CONTRACT

The Parties agree that maritime law governs Captain Alaska's breach of contract claim. *See* Dkts. 45, 66. Under maritime law, the same "basic principles in the common law of contracts" apply to maritime contracts. *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013). To state a claim for breach of contract under maritime law, the plaintiff must plausibly allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *W. Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1116 (W.D. Wash. June 21, 2021) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2nd Cir. 2004)). The first factor, the existence of an agreement, depends on mutual assent, meaning an offer and acceptance between the contracting parties. *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019) (citing *Weiss v. Lonnquist*, 153 Wn. App. 502, 511 (2009)). A party may indirectly assent to a

contract through an agent. *See Wilcox v. Basehore*, 187 Wn.2d 772, 789 (2017). However, an agency relationship only exists if "the principal [party] had the right to control the details of the agent's performance." *Id*.

Captain Alaska fails to plead that it had an agreement with Majestic. It argues that it had an agreement with Hogan for welding services and that Hogan failed to perform those services. Notably, the Complaint states that "the facts as alleged above constitute breach of the agreement between [Captain Alaska] and Hogan." Dkt. 45, ¶ 12. It does not allege an agreement between itself and Majestic. Nonetheless, Captain Alaska makes clear through its pleadings that it intends to bring a breach of contract claim against both Hogan and Majestic. To support its claim against Majestic, Captain Alaska states repeatedly that Hogan made assurances "on behalf of himself and Majestic," and that "Majestic was aware of Hogan's conduct and [Captain Alaska]'s unwitting trust, and willingly benefitted therefrom. Dkt. 45, ¶¶ 6–7; Dkt. 67 at 7–8. In opposition to the motion to dismiss, Captain Alaska states that Hogan was Majestic's agent and that he had authority to speak on behalf of Majestic. Dkt. 67 at 7, 8, 12. Nonetheless, Captain Alaska does not plausibly allege that Hogan was Majestic's agent or that his actions could otherwise bind Majestic into a contract for welding services or anything else with Captain Alaska.

Captain Alaska is correct that it is reasonable to infer that some type of agreement existed between Hogan and Majestic. Hogan works on ships at Majestic, though not as Majestic's employee, and Majestic presumably provides services necessary for Hogan to work, like power and water. *Id.* at 7. While it may be reasonable to infer an agreement

existed in which two independent parties work together, it is not reasonable to infer that Majestic had direct involvement in Hogan's agreement with Captain Alaska or the right to control the details of his performance. Therefore, Captain Alaska does not plausibly allege that it had a contract with Majestic, and its breach of contract claim against Majestic should be dismissed. Dismissal, however, should be without prejudice in accordance with Federal Rule of Civil Procedure 15(a)'s generous standard for allowing amendment. It seems clear that Majestic had some sort of arrangement with Captain Alaska; its ship is in Majestic's shipyard, and Captain Alaska alleges that it will not let him remove it.

### C. GOVERNING LAW FOR TORT CLAIMS

In response to Majestic's motion to dismiss, Captain Alaska asserts that substantive federal maritime law governs its tort claims both because they are before the Court based on admiralty jurisdiction and because there is diversity jurisdiction and the claims sound in admiralty. Dkt. 67 at 11 n.8. Majestic responds that jurisdiction is not an issue properly before the Court because Majestic did not raise jurisdiction in its motion to dismiss. Dkt. 68 at 2 n.1. The existence of federal jurisdiction is not at issue. The Parties appear to agree, and it appears to the Court, that this matter is properly in federal court.

Furthermore, there does not appear to be a dispute over governing substantive law. When a matter sounds in admiralty, Courts must apply admiralty law over conflicting state substantive law. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 228 (1986). Substantive admiralty and Washington state law do not appear to conflict on the issues

ORDER - 7

raised in this motion. The Court will therefore rely on Washington state law for the tort claims because that is what the parties cited in their briefing.

### D. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND BUSINESS EXPECTANCIES

Under Washington law, the elements of tortious interference with a contract or business expectancy are: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendant[] had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendant[] interfered for an improper purpose or used improper means; and (5) resultant damage." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351 (2006).

From the cross-complaint and pleadings, it is reasonable to infer that Majestic knew about Captain Alaska's business relationship with Ocean Beauty, Majestic intentionally refused Captain Alaska access to its vessel and property after Hogan failed to complete welding work, and that refusal prevented Captain Alaska from getting necessary work done, which prevented Captain Alaska "from performing its obligations to Ocean Beauty." Dkt. 45, ¶ 10. Majestic argues that it is unreasonable to infer that it knew about Captain Alaska's contract with Ocean Beauty, Dkt. 66 at 6, but it is reasonable to infer that Majestic knew about Captain Alaska's business expectancies by virtue of the Vessel being at the shipyard for multiple years.

As Captain Alaska argues in its response, Hogan not only worked out of Majestic, he and Majestic's sole owner and/or manager, Royce Hatley, both lived on Majestic

property. Dkt. 67 at 2–3. Hogan likely would have known about Captain Alaska's fishing business because Captain Alaska paid him over $1,000,000 to work on the Vessel and Hatley reasonably could have known through Hogan, either by virtue of working together or living on the same property. It is also reasonable to infer that, if true, Majestic intentionally and improperly interfered with that business based on the alleged storage dispute in which either Majestic or Majestic through Hogan demanded a storage fee that Captain Alaska did not agree to. Unlike the breach of contract claim, if Hogan demanded storage money from Captain Alaska, he could plausibly have done so as Majestic's agent. A storage fee would presumably go to Majestic, with Hogan demanding payment on its behalf. Furthermore, demanding money without a valid claim to it, and denying Captain Alaska access to its Vessel and property, would be an intentional act reasonably expected to prevent Captain Alaska from fulfilling fishing contracts.

Majestic, however, is correct that there are problems with some of Captain Alaska's allegations. For example, Captain Alaska claims that Hogan, and through him Majestic, spoke ill of Captain Alaska to other companies after Captain Alaska refused to pay them more money. This claim, however, does not make clear which contracts or business relationships the negative statements allegedly interfered with or what harm they caused. To the extent that the alleged harm relates to Captain Alaska's inability to pay Ocean Beauty, it is not clear how negative statements to other businesses would prevent Captain Alaska from paying its loan.

Nonetheless, Captain Alaska states a claim against Majestic for tortious interference, so Majestic's motion to dismiss this claim should be denied. Should Captain Alaska wish to amend its claim to clarify its theories of liability, it may do so.

## E. CONVERSION

Under Washington law, conversion "occurs when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619 (2009).

Captain Alaska claims that Majestic refused to allow Captain Alaska to remove its property, including the CAPTAIN ALASKA vessel, equipment, and appurtenances, from Majestic's premises. Dkt. 45, ¶ 11. If true, Majestic may be unlawfully retaining possession of Captain Alaska's property. Therefore, Captain Alaska plausibly states a claim for conversion.

## F. FRAUD AND MISREPRESENTATION

A plaintiff claiming fraud must prove each of the following nine elements:

> (1) Representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) the plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stieneke v. Russi*, 145 Wn. App. 544, 563 (2008).

It is not clear from the cross-complaint what representation of fact Captain Alaska contends Majestic materially misrepresented. To the extent that Captain Alaska intends to base this claim on Hogan's representation that he would perform welding work, it does

ORDER - 10

not plausibly allege that Hogan's actions could bind Majestic. Therefore, Captain Alaska fails to state a claim of fraud. This failure, however, could possibly be cured by alleging additional facts, so Captain Alaska's fraud claim should be dismissed without prejudice.

**G. EXTORTION**

Majestic moves to dismiss Captain Alaska's extortion claim on the grounds that a private right of action for extortion does not exist under Washington law, and, in the alternative, that Majestic fails to allege facts to plausibly state a claim. Dkt. 66 at 17.

As a criminal charge, extortion "means knowingly to obtain or attempt to obtain by threat property or services of the owner, and specifically includes sexual favors." RCW 9A.56.110. Captain Alaska argues that extortion also includes a private right of action in tort and string cites various cases. Dkt. 67 at 12 n.9 (*citing Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994); *Smithfield Food Inc. v. United Food and Com. Workers Int'l*, 633 F. Supp. 2d 214 (E.D. Va. 2008); *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 945 F. Supp. 1355 (D. Or. 1996); *McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992); *Monex Deposit Co. v. Gillian*, 680 F. Supp. 2d 1148 (C.D. Cal. 2010)).

None of these cases apply Washington or admiralty law. Only *Monex Deposit Co.* supports Captain Alaska's general argument; it recognizes an implied cause of action for attempted extortion under California law from the California criminal code. 680 F. Supp. 2d at 1155. The other cases Captain Alaska cites reference extortion as an element of a separate cause of action, for example violation of the civil Racketeer Influenced and Corrupt Organizations Act ("RICO") or the Hobbs Act. This is consistent with cases

ORDER - 11

under Washington law, which also recognize extortion as an element of other causes of action. *See, e.g.*, *DeWater v. State*, 130 Wn.2d 128, 134–35 (1996) (considering allegation of extortion as part of quid pro quo sexual harassment claim); *Henningsen v. Worldcom, Inc.*, 102 Wn. App. 828, 845 (2000) (same); *Thompson v. Berta Enter., Inc.*, 72 Wn. App. 531, 536 (1994) (same).

Captain Alaska does not establish that a private right of action for extortion exists under the governing law, and dismissal is, therefore, appropriate. *See Neely v. Boeing Co.*, No. 16-cv-01791 RAJ, 2018 WL 2216096, at *6 (W.D. Wash. May 15, 2018); *Johnson v. Grays Harbor Cmty. Hosp.*, No. 06-cv-5502 BHS, 2008 WL 819724, at *17 (W.D. Wash. Mar. 25, 2008). The only Washington case suggesting that a civil extortion claim might be viable dismissed the claim for lack of evidence. *See Richardson v. Kim*, 116 Wn. App. 1008, 2003 WL 932447, at *1 (2003) ("*To the extent that the criminal term 'extortion' sets out a civil cause of action* . . . [Plaintiff] presents no evidence of wrongful or oppressive conduct.") (emphasis added). However, it is not impossible that a private right of action exists either for extortion or under a similar cause of action. Therefore, Captain Alaska's extortion claim should be dismissed without prejudice.

### H. WASHINGTON STATE UNFAIR BUSINESS PRACTICES AND CONSUMER PROTECTION ACT

The Washington Consumer Protection Act ("CPA") declares that "[u]nfair methods of competition and unfair or deceptive acts or in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. It creates a private right of action in which:

ORDER - 12

a claimant may establish that the act or practice is injurious to the public interest because it: (1) Violates a statute that incorporates this chapter; (2) Violates a statute that contains a specific legislative declaration of public interest impact; or (3)(a) Injured other persons; (b) had the capacity to inure other persons; or (c) has the capacity to injure other persons.

RCW 19.86.093.

Majestic, as a shipyard, is a business engaged in trade or commerce. Captain Alaska claims that Majestic demanded a storage fee despite no such agreement and refused it access to its vessel and property. As Captain Alaska asserts, these "acts and practices are capable of repetition and [could] affect the public interest." Dkt. 45, ¶ 17. Therefore, Captain Alaska states a viable CPA claim, and the motion to dismiss that claim should be denied.

## I. LEAVE TO AMEND

This Order dismisses Captain Alaska's claims of breach of contract, tortious interference with a business relationship, fraud, and extortion because Captain Alaska did not plausibly state those claims. It is not clear from the pleadings that Captain Alaska could not plausibly state those claims. Therefore, the Court dismisses them without prejudice. Captain Alaska may file amended claims in accordance with Western District of Washington Local Civil Rule 15. If it chooses to amend, Captain Alaska must do so by **May 13, 2022**.

## III. ORDER

Therefore, it is hereby **ORDERED** that:

- Majestic's Motion to Dismiss, Dkt. 66, is **GRANTED in part** and **DENIED in part**;

- Captain Alaska's claims of breach of contract, tortious interference with a business relationship; fraud; and extortion are **DISMISSED without prejudice**;

- Captain Alaska may file amended claims on or before **May 13, 2022**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 25th day of April, 2022.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 14