UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OCEAN BEAUTY SEAFOODS LLC,<br><br>Plaintiff,<br><br>v.<br><br>CAPTAIN ALASKA, et al.,<br><br>Defendants. | CASE NO. C19-6173 BHS<br><br>ORDER |

THIS MATTER is before the Court on defendant/cross claim defendant John "Mike" Hogan's motion for a protective Order, Dkt. 105, and on defendant/cross claim defendant Majestic Acres' Motion for an extension of time to comply with the Court's prior Minute Order, Dkt. 111.

The case now involves only defendant/cross claim plaintiff Captain Alaska Fish Co.'s claims against Hogan and Majestic Acres, arising out of Hogan's agreement to build a fishing vessel, the *Captain Alaska*, at Majestic Acre's shipyard in Port Townsend. Captain Alaska sought from Hogan discovery into his communications with Royce Hartley, who owns Majestic Acres, and Hogan's friends, John Holbert and Ryan Hodges. Hogan asserts these friends were his "confidants" in dealing with the litigation, and that

ORDER - 1

Hodges was also his scrivener, in connection with Hogan's previously pro se defense of Captain America's cross claim.

The Court ordered Hogan to respond to the discovery, or to seek a protective order, on June 29, 2022. Hogan obtained counsel and sought a protective order, arguing that many of his communications with Hatley, Holbert, and Hodges were made in anticipation of litigation, and that they are therefore protected by the work product doctrine. He concedes that some of the communications are not so protected, and agrees to produce those communications. See Dkt. 110 at 3.

Captain Alaska argues that Hogan has still not produced any responsive documents since the June hearing, including the two "time books" he agreed to produce in court that day. It also argues that any work product doctrine objection to the discovery is waived as untimely. The Court is not persuaded by that claim, but the fact remains that Hogan has not produced the documents, answered the interrogatories, or produced a privilege log. Absent such a log, Captain Alaska and the Court have no meaningful way to ascertain the veracity of Hogan's claim that his communications with his friends were made in anticipation of litigation (even though they are not protected by the more frequently asserted attorney-client privilege).

As an initial matter, Hogan is ORDERED to produce a privilege log detailing the communications that he asserts are protected from production as work product. He should do so within 10 days. The Court may require Hogan to produce the documents for review *in camera,* to determine whether they are in fact so protected. In the meantime, his motion for a protective order is DENIED without prejudice until the Court and Captain

Alaska review that privilege log. If Captain Alaska contends that the log does not support the work product claim, it may file a short motion seeking *in camera* review. Hogan shall produce the documents he concedes are not so protected, including the "time books," within 10 days.

Majestic Acres seeks additional time to submit its (Hatley's) computer for forensic examination, arguing that the process is lengthy and expensive. He asks for additional time to complete the task, and for additional guidance on the scope of the examination, arguing that the volume of emails that will be retrieved using Captain America's proposed search terms (including common words like "use, own, wife, friend, say, tell, not will, and do"), Dkt. 111-1, will produce "thousands of pages" of documents. Dkt. 111 at 2–3.

Captain Alaska points out that Majestic Acres previously relied on the claim that Royce Hatley was "not tech savvy" and used his computer and phone only minimally, Dkt. 112 at 2, and that he expressly waived any objections to the scope of the discovery. *Id*. (citing Dkt., 85 at 2). It does not oppose an extension of time to complete the search but points out that the recovery of these emails and texts is only required because Hatley inexplicably deleted them. *Id*.

Majestic Acres responds that not being tech savvy does not inoculate one from receiving junk email, and that Captain Alaska's proposed search terms will capture virtually every file on his computer.

The Court is not persuaded that the inadvertent capture of junk emails is overly burdensome or expensive. It does agree that some of the approximately 250 search terms

ORDER - 3

proposed at Dkt. 111-1 (and highlighted above) are too broad to be useful. One of the forensic IT professionals contacted by Majestic suggests that a more reasonable search would include 10–20 terms.

The Court agrees that Captain Alaska can and should focus the search terms to better aim at the emails and other files that might reasonably lead to the discovery of admissible evidence in this case. The Court will limit the terms to 50 key words. Surgical precision is not necessary, and weeding through retrieved junk emails is faster and cheaper than litigating the issue in court. Majestic Acres' claim that there is "no evidence" that it had any involvement in the project that led to this dispute would be more persuasive if he had already produced the requested materials. Captain Alaska is entitled to the requested information. If the search with 50 terms is demonstrably unhelpful, Captain Alaska may ask the Court to order a revised search.

Majestic Acres' motion for an extension of time is GRANTED, and it shall perform the ordered search with the revised, truncated search terms, and produce responsive documents within the retrieved data within 21 days of this order.

IT IS SO ORDERED.

Dated this 22nd day of August, 2022.

BENJAMIN H. SETTLE
United States District Judge